IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2006 FEB 21 P 4: 51

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| PLAINTIFF, | * |
| v. | * CASE NO. 2:05CR167-T |
| WAYNE NICKOLS, | * |
| DEFENDANT. | * |

### SENTENCING MEMORANDUM

Comes now Wayne Nickols by and through undersigned Counsel and files this his Sentencing Memorandum for the courts consideration prior to his presently set February 27, 2006 sentencing and in support thereof states the following:

### INTRODUCTION

On August 3, 2005 Nickols pled guilty to a one count information charging violation of 18 U.S.C. §1341 and 18 U.S.C. §2. In pertinent part the information addressed illegal conduct committed by Nickols during the time he was a contract employee of the Montgomery Housing Authority.

The information charges that during the years of 1994 through October 2001 Nickols was involved in a scheme to provide booklets at an inflated price to the Montgomery Housing Authority, total value of $243,280. Of this $243,280 it was also charged in the information that Nickols provided an employee of the Montgomery Housing Authority approximately $40,000.

A presentence report has been prepared in this case. The Probation Officer has suggested using the 2000 edition of the Federal Sentencing Guideline Manuals. The Probation Officer has determined that the Base Offense Level should be 10. Pursuant to the specific characteristics of

Section 2C1.7(b)(1)(A) and (b)(1)(B), an 8 level increase was suggested by the Probation Officer. This would bring the total offense level to 18. A three level adjustment for acceptance of responsibility as suggested in the presentence report would make the proposed guidelines offense level 15. The guidelines, based on Nickols Criminal History Score of I, were suggested at 15 to 24 months.

Nickols has filed objections to the presentence report suggesting to the Probation Officer that the guidelines should be calculated using United States Sentencing Guidelines Manual, Section 2F1.1. The thrust of Nickols argument is that the illegal conduct did not constitute bribes but instead a sharing of the profits with other Montgomery Housing Authority employees. Nickols contends that he did not offer to pay bribes to receive contract work. He was already doing the contract work when approached by an unindicted co-defendant and asked for money. It is noteworthy that the Government in recognition of the actual offense conduct in this case did not charge Nickols with violation of 18 U.S.C. §1346 (honest services). Instead Nickols was allowed to plead to 18 U.S.C. §1341 and 18 U.S.C. §2, the general fraud statute. The plea agreement entered into in this case is an 11(c)(1)(C) plea. It was determined by the parties, based on the totality of the circumstances, Nickols cooperation, and his family situation, that prison would not be appropriate for him.

### TITLE 18 U.S.C. § 3553

[E]very lawyer engaged in defending criminal cases knows that often a finding of guilt is a foregone conclusion and that the real issue centers about the severity of the punishment. *Smith v. United States*, 223 F.2d 750, 751 (5th Cir. 1955). Nickols argues in this case that any prison sentence would be too severe.

The *Booker* decision has two parts. In the first part, the Court held that the Federal

Sentencing Guidelines, promulgated pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 *et seq.*, violated a defendant's right to a jury trial under the Sixth Amendment. This was so because the Guidelines required a judge to find facts that can increase a defendant's sentence beyond what could be imposed solely based on the jury's verdict. As a remedy, in the second part, a different majority of the Court severed two parts of the Act, 18 U.S.C. § 3553(b)(1), which made the guidelines mandatory, and 18 U.S.C. §3742(e), which mandated a *de novo* standard of review. With these modifications, the Court noted that "the Federal Sentencing Act . . . makes the Guidelines effectively advisory." *Booker*, 125 S. Ct. at 757.

The return to the exercise of true judicial discretion in sentencing is explained in these words of the Supreme Court:

> We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. Indeed, everyone agrees that the constitutional issue presented by these cases would have been avoided entirely if Congress had omitted from the SRA the provisions that make the Guidelines binding on district judges . . . For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.

Booker, 125 S. Ct. at 750 (citations omitted).

With the decision by the United States Supreme Court that the Federal Sentencing Guidelines were unconstitutional, its *Booker* decision holds that a defendant's Sixth Amendment rights are violated where the mandatory guidelines required judges to find facts resulting in specific sentencing consequences having the effect of increasing a defendant's sentence beyond that range which would apply either by a jury's verdict or by a plea of guilty by the defendant. The Court, in a separate majority opinion, which has been described as the

"remedial" opinion, deemed that the guidelines are now merely "advisory" and that district judges are to "consider" the guideline ranges presented in the sentencing context while having the discretion to form a sentence in light of other statutory concerns, specifically those presented in 18 U.S.C. §3553(a).

## WHAT MUST BE CONSIDERED IN POST-BOOKER SENTENCING

*Post-Booker* the guidelines become but one of several factors to be considered by the court in the sentencing process. First, the guideline range, including policy statements are to be considered under 18 U.S.C. § 3553(a)(4) and (5) as an advisory guide. Applicable departures under the guidelines are also to be considered. Now the courts must also consider the statutory directives presented in other parts of § 3553(a) as well as the Congressional directive that "No limitation shall be placed on the information concerning the background, character and conduct of" the defendant in the course of the sentencing process. 18 U.S.C. § 3661. In other words the court is free to sentence just like it did pre-November 1987.

Departures under § 5H1 which, by the Sentencing Commission's policy statements, had all but become mandatorily inapplicable to defendants and their personal circumstances, are no longer outside the scope of a sentencing court's assessment of a reasonable sentence.

Section 3553(a)(1) specifically directs that the court shall consider during the sentencing process "the history and characteristics of the defendant". Therefore, such matters as age, employment, family ties, good deeds, health, and community ties, for instance, can and should be considered by this court in fashioning a reasonable sentence. Under the same subsection of §3553, the court is directed to consider the "nature and circumstances of the offense" without the mandatory directives of the now advisory guidelines. The court is directed in §3553(a)(2)(A) to fashion a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to

4

provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant; . . . ." Under *Booker*, each of these factors is to be separately considered by a court as part of the entire sentencing process.

Further, § 3553(a)(6) directs the sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ." That certainly means more than calculating each defendant's guidelines and simply imposing the mandated sentence. Finally, under § 3553(a)(7), the court shall consider "the need to provide restitution to any victims of the offense." The court must now analyze whether a deviation from the "advisory" guideline range is appropriate giving due consideration to each of the factors enumerated. The former mandatory nature of the guidelines and decisions supporting the policies of the Sentencing Commission omitted consideration of personal and historical characteristics.

At sentencing Nickols must be granted the opportunity to present any relevant evidence about his personal history and characteristics as required by § 3553(a) and 3661 and present argument about the role that each subsection of 3553(a) should play in the sentencing process. The court must ultimately analyze whether a prison sentence actually reflects the seriousness of this conduct and is required for deterrence of similar criminal conduct, is necessary to protect the public from Mr. Nickols, and, more importantly, represents a disparate sentence in comparison to the sentences imposed on others in similiar circumstances.

The court should consider the need for the sentence to reflect the seriousness of the offense and the need to deter Nickols and others from committing further crime. *See* § 3553(a)(2). Nickols adopts and reargues by reference as if fully incorporated herein all of the sentencing objections previously filed. Further, the court can and should consider the panolopy of

other mitigating arguments now permissible under *Booker*.

## MATTERS IN MITIGATION

### Actual Offense Conduct

As noted earlier and as will be argued at sentencing, Nickols conduct was inappropriate and illegal. However, he did not devise the scheme. He was producing legitimate work in a law abiding manner for the Montgomery Housing Authority. He was approached by an employee, an un-indicted co-conspirator and essentially pressured to provide him money in order to keep and continue to obtain contracts. The government will agree that the most appropriate guidelines for this conduct are under the fraud guidelines as opposed to those suggested by the Probation Officer.

### Monetary Amount

The presentence report suggests that the monetary amount involved in this case is between $200,000 and $400,000. Nickols has always disputed the fact that the amount was above $200,000 arguing instead that it was less than $200,000. If Nickols prevailed on this argument, which he will not advance at sentencing, his guidelines would be lowered under either of the guideline scenarios suggested by probation or the defense. For purposes of this sentencing memorandum, he argues that the suggested amount of $243,280 dollars referenced in the presentence report is much closer to the $200,000 threshold in the guideline category rather than the $400,000 ceiling range. This factor can be considered in mitigation by the court.

### Cooperation

Nickols was originally approached as a target of this investigation and was provided an opportunity to cooperate with law enforcement. Nickols spent a substantial amount of time with agents from the FBI and the Attorney General's Office explaining the intricate details of his

offense conduct and that of the un-indicted co-defendant. This cooperation was provided early and it was thorough and substantial.

Nickols candor with the agents assisted them in understanding the offense conduct and aided in identifying participants, methods, and means by which the conduct occurred. This has helped facilitate an expedient resolution to the problem and the potential for cooperation against other criminal wrong doers. It is anticipated that prior to sentencing the government will move this court for a downward departure based on substantial assistance to the government.

It should also be noted that Nickols did not force the government to conduct a lengthy investigation as relates to him and pled to an information avoiding the necessity of the presentation of this case to a grand jury and the other attendant circumstances that would follow.

**Basis For Non-Custodial Sentence**

**Defendant's Health**

Wayne Nickols is a 70 year married individual. He previously suffered a mild heart attack in 2001. He has high blood pressure and high cholesterol. He has Type II Diabetes, and Glaucoma. It is noted in the presentence report that Nickols is on a variety of medications to try to improve and maintain his health. (Exhibit A) Nickols medical conditions are more serious than normally seen. His age is also a factor. Nickols can continue his employment with the State of Alabama and maintain his current health insurance providing the necessary coverage for his medication and medical treatment. If incarcerated the burden will be on the United States Government and taxpayers.

**Family Situation/Hardship**

Nickols present wife has three children. Nickols and his present wife, Sharon, were married in October 1998. Nickols assumed the primary responsibility for these children and has acted as a reliable step-father. More importantly, however, is Nickols care and devotion to his

7

step-daughter Tracey's son, Matthew, a minor child, age six. Matthew actually resides in the marital home with Nickols and his wife. There are extenuating and difficult circumstances involving the birth father that have placed the responsibility of the care and upbringing of this child on Nickols. Nickols and his wife are extremely devoted to this child and his positive adjustment, in significant part, is directly attributable to Wayne Nickols

Nickols and his wife assist Matthew with doctor co-pays, medication, reading lessons, haircuts, books, school uniforms, and sports fees. They also help Matthew's mother, Tracey, with some incidental expenses.

**Community Support**

**Mark S. Yarborough, Administrative Division Manager, Alabama Development Office**, writes a letter to the court in support of Wayne Nickols. (Exhibit B) Yarborough advises that he has been Nickols supervisor since Nickols was hired in August 1988. He commends Nickols for his competency and the asset he has been to the department. He states that Nickols displayed the ability to squeeze a limited budget and older equipment which has enabled ADO to compete with other states in the economic development area. He stated that Nickols has repeatedly worked after hours and on week-ends without additional compensation or compensatory time off to maintain and upgrade the information system and to ensure the security of the data kept there. Particularly noteworthy is Yarborough's observation "He has shown concern and empathy for his fellow employees on many occasions. For instance, on numerous occasions he has donated many hours of his accumulated time to other co-workers who were sick, injured, or attending to family members. Every year he generously participates in agency fund-raising events such as United Way. He keeps coffee and mints in his office for staff members to enjoy them. Even though he, himself, does not."

Yarborough goes on to say "I know that he faithfully attends church and participates in church activities with his wife and family. Due to a very unfortunate driving mishap, his son-in-law has been confined to a medical facility for several years and may never be able to live independently again. As a result his wife's daughter and her six year old son, Matthew, live with Wayne and his wife. Wayne is helping to rear Matthew, serving as the "father figure" every boy needs. Wayne takes Matthew to church, baseball, Taekwondo, and all the other things a father normally does. There are pictures of the boy all over his office. I don't believe he could love Matthew anymore than if he were his own son."

Nickols is a faithful member of the Taylor Road Baptist Church where he serves on an administrative board. He is a good steward and tithes regularly. He also participates in church business affairs.

Additionally, there is correspondence to the court from **Roy A. Kitchens**. Mr. Kitchens has served as the Intercessory Prayer Ministry Coordinator for Taylor Road Baptist Church, Montgomery. He acknowledges that Wayne became an active part of this ministry several years ago. He states that the sign-in sheets for the prayer ministry reflect that each month and each year in the prayer room Wayne spends more time praying for people and issues than any other Prayer Warrior including Taylor Road Baptist Church staff members and Mr. Kitchens, the Ministry coordinator. (Exhibit C)

In addition there is also a letter from **Terry Drew**. Terry indicated that Wayne and his wife Sharon have been in his Sunday School class for six years. Wayne has served on the age 50+ activity planning committee for three years and three years on the public relations committee at the church. He states "Wayne struck me as being a dedicated Christian and loving husband, father, and grandfather. He is one of the most humble, unassuming men I have ever known, truly

9

the kind of man who would 'give you the shirt off his back'. I am glad to call him my friend." (Exhibit D)

Finally, there is a letter to the court from **Martha H. Carter** regarding her work with Wayne while she was the Executive Director of the Andalusia Housing Authority from 1984 until 2003. She indicated she worked very close with Wayne as a consultant. She indicated that Wayne helped put together, in the proper format, the necessary information to receive grants from Housing and Urban Development. She indicated that over the span of her career they received grants totaling $3.5 million. Without Wayne's expertise that could not have been accomplished.

She said that "during the time Mr. Nickols assisted me as Executive Director, he performed duties which were beyond the small compensation which he was paid. He would stay as long as necessary (sometimes as late as 11:00 p.m.) to get the paperwork completed for submission to HUD before deadlines. His knowledge of HUD regulations and experience were invaluable, and we felt fortunate to have him assist our Authority."

I consider Mr. Nickols of the highest caliber and his character is beyond reproach. He is a Christian man whom I trust and respect very highly." (Exhibit E)

## CONCLUSION

For all of these reasons, and for the reasons to be stated on the record at the sentencing hearing, a probationary sentence is warranted and in compliance with the plea agreement.

Respectfully submitted,

Susan G. James (JAM012)
Attorney for Wayne Nickols

10

## CERTIFICATE OF SERVICE

    I hereby certify that on February 21, 2006, I filed the foregoing with the Clerk of Court and to the following:

Andrew Schiff
Assistant United States Attorney
P.O. Box 197
Montgomery, Alabama, 36101